IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

FOLASHADE BISHHIBAWAALAH,

    Plaintiff,

vs.

JANET L. YELLEN, SECRETARY,
DEPARTMENT OF THE TREASURY
(INTERNAL REVENUE SERVICE),
AGENCY, et al.,

    Defendants.

Case No. 5:24-cv-387 (BKS/ML)

**JURY TRIAL DEMANDED**

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### PARTIES

A.     Folashade Bishhibawaalah


B.     IRS
Rochester Field Office
Farash Building
255 East Avenue, Rochester, NY 14604

Nerissa Smith
Supervisor

Tom Lynch
Office Manager

C.     Janet Yellen
Treasury Department
1500 Pennsylvania Avenue
Washington, DC 20220

Place of Employment:

   IRS Rochester, New York – 255 East Avenue, Rochester, New York 14604

**BASIS OF JURISDICTION**

This action is brought under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. Seqs.2000e to 2000e-17 (race, color, gender, religion, national origin), and the Americans with Disability Act of 1990 as codified 42 U.S.C. 12112 to 12117

**STATEMENT OF CLAIM**

1. Plaintiff, Folashade Bishibawaalah was hired by the Rochester New York office of the Internal Revenue Service in August 2021 to be "greater" at the local IRS office. For one year, she was to be a probationary employee – a "career-conditional" appointment, in as it is termed by the federal government – Clerk, GS-0303, Grade 05. She spoke with an accent but was entirely understanding.

2. At the time she was offered her position with the IRS, she was promised on the job training. Ultimately, she received none. She was evaluated exceptionally early on in her probationary period where her marks were not stellar because she had not received training and the evaluations were proposed thereto.

3. Those evaluations were not adequate nor reasonable on the job evaluation.

4. The Plaintiff was a very hard worker and wanted very much to succeed. Management had something very different in mind.

5. On February 2, 2022, she was seriously injured as she walked with Office Supervisor Tom Lynch to her car, which was parked in the parking garage which served the commercial building that the IRS leased. Her accident occurred while she was in the course of employment with the IRS.

6. Plaintiff would go on to be forced to remain out of work for numerous months, eventually undergoing surgery for her knee and attending numerous months of physical therapy.

She is presently waiting for trigger point injections which she has not been approved for because she has not been approved for worker's compensation benefits.

7. The IRS had an obligation to notify plaintiff of her right to secure workers compensation benefits and at the very least, provide her with the information needed to go about securing those benefits.

8. Plaintiff's nonreceipt of worker's compensation benefits is directly attributable to the conduct of the IRS and its Rochester office.

9. The IRS not only failed to advise her of her right to pursue workers compensation benefits but failed to assist her in securing same. The office staff lied to her and said that those in the office were unfamiliar with the filing process, and she would have to figure it out on her own. Those supposedly unfamiliar had worked at the IRS for over 20 years. When she was denied benefit, the IRS undertook no efforts to assist her in securing same or appealing any determination.

10. Plaintiff is of African descent and speaks with a noticeable accident. She was typically ridiculed in the office with people making fun of her ability to speak English which is perfectly acceptable. The office would also call or names such as dog and refer to her as to how and smelling bad with people "wondering where her tail is."

11. Plaintiff was diligent in securing all requisite documentation from her doctor's attributing her out of work condition to her physical disability. She could not go to work because she was simply into much pain.

12. Plaintiff had used up all of her paid time afforded by the IRS during a probationary period and was also granted unpaid leave from the IRS permitting her to remain out of work during such time because of her pain.

13. Those requests even for unpaid leaves would come back to haunt her as supervisor Nerissa Smith conjured a manner in which to terminate plaintiffs on the pretext basis of competency although was a mask for discrimination based upon disability.

14. Outrageously, Nerissa Smith also based plaintiff's termination upon absenteeism completely, not referencing the fact that she was involved in a work-related accident. She only referenced a work-related accident when she falsely claimed that plaintiff had secured worker's compensation benefits which were not rightly hers. In that statement Nerissa Smith inferred that plaintiff had engaged in criminal conduct by somehow wrongly securing benefits which were not due to her but would eventually have to be paid back. Same was in her termination letter provided to plaintiff at the end of her probationary period.

15. Plaintiff traveled to work one day after her incident with the assistance of her son to speak to Tom Lynch about her job and worker's compensation benefits. At that time Nerissa telephoned Tom and plaintiff could hear in the office of Tom's Smith Nerissa say "I can smell her from here"

16. Upon receipt of the termination letter, plaintiff became terrified of Nerissa Smith's use of lies and misrepresentations in same which were taken as threats and innuendoes of plaintiff's engagement in criminal conduct.

17. When the plaintiff finished reading that termination letter, she was terrified into a lull. In other words, plaintiff did not move upon that termination letter in a manner which provided her timely redressed to the EEOC.

18. At no time during her employment with the IRS or within the termination letter was plaintiff expressly advised of the 45-day time requirement to commence a complaint and/or proceeding against the employer on the basis of discrimination. She was not advised by either termination letter or by signage or materials distributed at work of the requirement to seek counseling with the EEOC counselor which was a condition precedent to filing a complaint with the EEOC.

19. One plaintiff received the IRS determination letter she was beside herself and was simply too scared to act because she was afraid of what Nerissa Smith would do next. He was a woman alleging in an official IRS document that plaintiff had engaged in criminal conduct and wrongdoing by fraudulently securing worker's compensation benefits which she would have to pay back. Plaintiff said to herself quote what else is this woman capable of".  Having that uncertainty be so significant, plaintiff did not undertake any efforts to ascertain whether there were any remedies against the IRS and/or Nerissa Smith for their clear discrimination on the basis of disability and national origin/race.

20. Plaintiff retained Ian Kaufman to represent her in the case against the landowners of the garage wherein her accident occurred. The garage was adjacent to the IRS building which housed plaintiff's car where she fell subsequent to her workday as witnessed by Tom Lynch.

21. Ian Kaufman contacted plaintiff as a result of receiving a quote leave" from lawyer.com with respect to an individual seeking representation for a slip and fall action in or around Rochester New York.

22. Ian Kaufman contacted the plaintiff and secured her as a client which was memorialized by way of retainer agreement.

23. At the time of retaining plaintiff, plaintiff communicated to Mr. Kaufman what had occurred at the IRS which precipitated her termination which naturally included the conduct of her supervisor and the facts which have been discussed so far.

24. Plaintiff was unaware that she could even secure an attorney to assist her in both the workers compensation aspect and discrimination aspect of the IRS's wrongdoing against her.

25. Ian Kaufman was only present for the purpose of representing plaintiff for the case against the landowners. At no point in time did plaintiff signed a retainer with Ian Kaufman for his representing her with respect to the discrimination and or worker's compensation claim which plaintiff possessed at that time.

26. Plaintiff did not undertake any efforts to secure other counsel for those claims because again she did not want to undertake any efforts against Nerissa Smith out of fear that the threats made in the termination letter were just the beginning of a potentially very scary situation wherein no one knew what was possible.

27. When Ian Kaufman learned that plaintiff had not secured representation for those other claims such as the discrimination and worker's compensation, he asked her if she would like him to take on those claims additional in addition to the ones against the landowner.

28. At that point in time when plaintiff agreed for Ian Kaufman to represent her in those additional claims, the 45 days against the 45 days in which to notify the EEOC guidance counselor had already expired.

29. The EEOC counselor was notified of the claim shortly thereafter but still nonetheless it was notified after 45 days.

30. This minor delay resulted in a denial of plaintiff's EEOC complaint against the IRS.

31. The complaint against the IRS was also dismissed on the basis of same being a purported collateral attack of her Worker's Compensation board decision/determination,

32. The complaint was not a collateral attack against the Worker's Compensation board determination because the IRS wronged plaintiff in its failure to provide assistance in securing worker's compensation benefits. These were all aspects of wrongdoing committed by the IRS and to hold that one of them precluded recovery for another is simply inequitable.

33. Ultimately the EEOC and the appellate board made no substantive findings as to the conduct of the IRS but rather rendered all determinations on procedural/timeliness issues.

34. It is well understood that there is a strong preference for resolution of claims to be on the merits and under that guise we respectfully submit this matter for court review in light.

### COUNT ONE
### Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.

35. The foregoing paragraphs are realleged and incorporated by reference herein.

36. The defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII.  The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretexted to hide the Defendant's discriminatory animus.

### COUNT TWO
### (Disability discrimination in violation of the Americans with Disabilities Act

37. The foregoing paragraphs are re-alleged and incorporated into reference herein.

38. The defendant's conduct as alleged at length herein based upon disability is in violation of the American with Disability Act.  The stated reasons for the Defendant's conduct were not true reasons but instead were pretexted to hide the defendant's discriminatory animus.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff FOLASHADE BISHIBAWAALAH demands compensatory damages in the amount of $750,000, attorney fees to be calculated at the termination of the matter, costs, disbursements, and all other monies deemed recoverable by counsel pursuant to common law and/or statute.

Dated: March 20, 2024  Respectfully Submitted,

IAN KAUFMAN LAW, LLC

Ian H. Kaufman, Esq.
3350 NE 12th Street
P.O. Box 23848
Oakland Park, Florida 33307
888-200-3024
Ian@IanKaufmanLaw.com